IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BENJAMIN ACUNA, | ) | CRIM. NO. 07-00615 SOM |
| | ) | CIV. NO. 12-00087 SOM/BMK |
| Petitioner, | ) | |
| | ) | ORDER DENYING MOTION TO |
| vs. | ) | VACATE, SET ASIDE, OR CORRECT |
| | ) | A SENTENCE BY A PERSON IN |
| UNITED STATES OF AMERICA, | ) | FEDERAL CUSTODY UNDER 28 |
| | ) | U.S.C. § 2255 |
| Respondent. | ) | |
| _____ | ) | |

**ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY UNDER 28 U.S.C. § 2255**

**I.    INTRODUCTION.**

Benjamin Acuna is currently serving a 384-month (32-year) sentence.  He was convicted of conspiring to distribute methamphetamine and to commit money laundering.  Acuna now seeks to vacate his sentence pursuant to 28 U.S.C. § 2255 on the ground that his trial counsel provided ineffective assistance.  The court denies his motion.

**II.    BACKGROUND.**

Acuna was indicted on November 17, 2007.  A superseding indictment, filed on July 2, 2008, charged Acuna with conspiring to distribute and possess with intent to distribute 50 grams of more of methamphetamine, its salts, isomers, and salts of its isomers (Count 1), and conspiring to commit money laundering (Count 3).  Counts 2 and 4 sought criminal forfeiture of the

proceeds and property derived from his criminal activities if he was convicted of Counts 1 and 3.

Acuna pled not guilty, and a jury trial commenced on August 6, 2008.  The United States presented evidence showing Acuna's leadership role in a sophisticated conspiracy to transport thousands of pounds of methamphetamine from Mexico to Las Vegas, then to Oahu.  Acuna and some of his co-conspirators were alleged to have owned stores in Nevada that they used to hide the income they derived from their drug sales.

On September 2, 2008, a jury convicted Acuna of Counts 1 and 3, and found him subject to criminal forfeiture for obtaining $8 million in proceeds, property in Nevada, and money held in various bank accounts from the drug and money laundering conspiracies.  See ECF Nos. 370, 386.

This court held a sentencing hearing on January 5, 2009.  With respect to Count 1, the court sentenced Acuna to 384 months in prison and five years of supervised release.  With respect to Count 3, Acuna was sentenced to 240 months in prison and three years of supervised release.  The terms are being served concurrently.  On December 15, 2010, the Ninth Circuit affirmed Acuna's conviction and sentence.  See ECF No. 636.

On February 13, 2012, Acuna moved to vacate his sentence pursuant to 28 U.S.C. § 2255, on the ground that his counsel's ineffectiveness had denied him his Sixth Amendment

right to counsel. He seeks an evidentiary hearing. This court conducted a telephone hearing at which Acuna, proceeding pro se, presented arguments through an interpreter. No live testimony was taken, and the court finds this matter suitable for disposition without an evidentiary hearing. The court now denies Acuna's motion.

**III.    LEGAL STANDARD.**

A federal prisoner may move to vacate, set aside, or correct his or her sentence if it "was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255. A petitioner must allege specific facts that, if true, entitle the petitioner to relief. See United States v. Howard, 381 F.3d 873, 877 (9th Cir. 2004); United States v. Rodrigues, 347 F.3d 818, 824 (9th Cir. 2003) (citing United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996)).

A judge may dismiss a § 2255 motion if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b), Section 2255 Rules. A court need not hold an evidentiary hearing if the allegations are "palpably incredible or patently frivolous," or if the issues can be

conclusively decided on the basis of the evidence in the record. See Blackledge v. Allison, 431 U.S. 63, 76 (1977); see also United States v. Mejia-Mesa, 153 F.3d 925, 929 (9th Cir. 1998) (noting that a "district court has discretion to deny an evidentiary hearing on a § 2255 claim where the files and records conclusively show that the movant is not entitled to relief"); Frazer v. United States, 18 F.3d 778, 781 (9th Cir. 1994).

**IV.     ANALYSIS.**

Acuna's motion asserts three ineffective assistance of counsel claims. To establish ineffective assistance of counsel, Acuna must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). There is "a strong presumption" that counsel's conduct was reasonable and that counsel's representation did not fall below "an objective standard of reasonableness" under "prevailing professional norms." Id. at 688.

Even if a petitioner can overcome the presumption of effectiveness, that petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction," judicial scrutiny of counsel's performance is highly deferential. Id. at 689.

4

### A. Claims One and Two.

In Claim One and Claim Two, Acuna argues that his counsel was ineffective in advising him to stand trial instead of to plead guilty or nolo contendere.

With respect to the first <u>Strickland</u> prong, Acuna alleges that his counsel did not fully advise him of the facts and law necessary for him to make an informed decision about whether he should proceed to trial or plead guilty. He says he does not understand English well, and he alleges that his counsel failed to explain his pleading options in a way he could understand. Acuna appears to be complaining not about the quality of the Spanish interpreter's services, but about the substance of the explanations his counsel provided. He allegedly thought his only options were to plead guilty and enter into a plea agreement for a life sentence, or proceed to a jury trial.

Acuna's motion says that, had he been fully informed of the law, Acuna would have pled guilty or nolo contendere, or sought a bench trial on stipulated facts. He contends that his counsel should have explained to him that "there was virtually no chance he could prevail at [a jury] trial due to the overwhelming weight and quality of the government's evidence." Mot. to Vacate Sentence Pursuant to 28 U.S.C. § 2255 ¶ 27, Feb. 13, 2012, ECF No. 651. He says he was "misadvised" that the only way he could obtain a benefit with respect to his sentence was by helping the

5

government prosecute others.  He allegedly did not know that the
United States Sentencing Commission Guidelines Manual provides
for a reduction of the guideline range of a defendant who accepts
responsibility for a charged offense.  U.S. SENTENCING GUIDELINES
MANUAL § 3E1.1 (2008).  He also allegedly did not know that, even
if he pled guilty or nolo contendere, he could have raised
mitigating factors that might lessen his sentence.  Thus, Acuna
argues, his not guilty plea was not voluntary and intelligent.
See, e.g., United States v. Diaz-Ramirez, 646 F.3d 653, 656-57
(9th Cir. 2011) ("[I]t has 'long been recognized' that a guilty
plea must be both 'intelligent and voluntary' to satisfy due
process." (quoting Brady v. United States, 397 U.S. 742, 747 n.4
(1970))).

    The United States argues that Acuna was aware of all
available options when he pled not guilty.  A declaration by
Acuna's counsel states that Acuna was fully informed of his
option to plead guilty.  United States' Response to Def.'s Mot.
Under 28 U.S.C. § 2255, Ex. C. ¶ 9, ECF No. 666.  Counsel states
that he was "very mindful" that English was not Acuna's first
language.  Id. ¶ 5.  He therefore only spoke to Acuna with a
certified Spanish interpreter when discussing any material or
substantive matters.  Id.  He says that at no time did he feel
there was a communication gap between himself and Acuna.  Id.
According to counsel, Acuna said he was not guilty, and he was

government prosecute others.  He allegedly did not know that the
United States Sentencing Commission Guidelines Manual provides
for a reduction of the guideline range of a defendant who accepts
responsibility for a charged offense.  U.S. SENTENCING GUIDELINES
MANUAL § 3E1.1 (2008).  He also allegedly did not know that, even
if he pled guilty or nolo contendere, he could have raised
mitigating factors that might lessen his sentence.  Thus, Acuna
argues, his not guilty plea was not voluntary and intelligent.
See, e.g., United States v. Diaz-Ramirez, 646 F.3d 653, 656-57
(9th Cir. 2011) ("[I]t has 'long been recognized' that a guilty
plea must be both 'intelligent and voluntary' to satisfy due
process." (quoting Brady v. United States, 397 U.S. 742, 747 n.4
(1970))).

    The United States argues that Acuna was aware of all
available options when he pled not guilty.  A declaration by
Acuna's counsel states that Acuna was fully informed of his
option to plead guilty.  United States' Response to Def.'s Mot.
Under 28 U.S.C. § 2255, Ex. C. ¶ 9, ECF No. 666.  Counsel states
that he was "very mindful" that English was not Acuna's first
language.  Id. ¶ 5.  He therefore only spoke to Acuna with a
certified Spanish interpreter when discussing any material or
substantive matters.  Id.  He says that at no time did he feel
there was a communication gap between himself and Acuna.  Id.
According to counsel, Acuna said he was not guilty, and he was

"adamant and unequivocal about going to trial." Id. ¶ 9. Counsel says that, based on the information provided by Acuna, he "could not ethically advise [Acuna] to plead guilty as he denied any involvement in any of the allegations against him." Id. ¶ 8. Counsel says that it was because Acuna denied guilt that counsel did not discuss with Acuna the potential reduction of his sentencing guideline range if he accepted responsibility. Id. ¶ 12. Counsel says that he did, however, inform Acuna that "the decision to plead guilty or not guilty was his alone." Id. ¶ 9.

At the hearing on this motion, Acuna reiterated the argument presented in his brief that, had he understood his attorney, he would have pled guilty. However, he said that he would have pled guilty to conspiring to distribute only 30 pounds of methamphetamine, which is the amount he says he personally distributed. Acuna conceded that he did tell his counsel he was not guilty, and that he expected his counsel to believe him. He takes the position that his counsel should have advised him to plead guilty anyway because he had no chance of being acquitted by a jury.

Even if Acuna did not understand his counsel, Acuna does not show that his counsel was ineffective. To demonstrate deficient performance Acuna must show that counsel's performance "'fell below an objective standard of reasonableness' based on 'the facts of the particular case [and] viewed as of the time of

7

counsel's conduct.'" Gonzalez v. Wong, 667 F.3d 965, 987 (9th Cir. 2011) (quoting Strickland, 466 U.S. at 688-90) (modification in original). Even if Acuna's counsel did not ensure that Acuna fully understood that a guilty plea could result in a lower sentence and that the United States had a strong case against him (a matter this court does not actually find), counsel's performance could not be said to have been unreasonable. It is undisputed that Acuna told his counsel that he was not guilty. Acuna's counsel had no duty tell Acuna that, despite being innocent, he would be better off pleading guilty. Acuna's counsel clearly could not have represented to the court that Acuna was guilty while Acuna was asserting his innocence. An evidentiary hearing is unnecessary on this point, as there is no dispute that Acuna told his counsel that he was not guilty and expected his counsel to believe him.

Even if Acuna could establish that counsel's performance fell below an objective standard of reasonableness, it is not clear that Acuna could establish the second Strickland prong, which requires a petitioner to show actual prejudice flowing from the alleged inefficiency of counsel. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 692. Acuna argues that he was prejudiced by his counsel's failure to

8

fully inform him of his option to plead guilty and accept responsibility because a guilty plea could have resulted in a lower sentence.

This court relied on the applicable United States Sentencing Guidelines Manual (effective November 1, 2008) and determined that Acuna's offense level was 46. Transcript of Proceedings on Jan. 5, 2009, ("Sentencing Transcript") at 20:13, ECF No. 574. The sentencing guideline for a level 46 offense is life in prison. Acuna's base offense level for conspiring to distribute 907.2 kilograms of methamphetamine (Count 1) was 38. The court added two levels because Acuna possessed a firearm, four levels because Acuna was a leader in the conspiracy, and two levels for obstructing justice. Acuna argues that, had he pled guilty or nolo contendere or stipulated to the facts, he would not have received the two-level increase for obstructing justice, as that related to his trial testimony, and he would have received a three-level reduction for accepting responsibility pursuant to § 3E1.1 of the United States Sentencing Commission Guidelines Manual. Acuna thus argues that his offense level would have been 41.

The court sentenced Acuna to 384 months, which happens to fall within the guideline range of 324 to 405 months at level 41. Although 384 months is on the higher end of the range for a

9

level 41 offense, Acuna would not necessarily have received a sentence shorter than 384 months.

Under 18 U.S.C. § 3553(a)(1)(6), a court is to consider, among other things, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Even if Acuna had pled guilty, this court would have been required to take into account the sentence of Acuna's wife and co-defendant, Anabel Valenzuela, who was also convicted of all counts in the indictment. This court sentenced Valenzuela to 384 months in custody for the drug conspiracy. Given the similar conduct by Valenzuela and Acuna, even if Acuna had pled guilty, he would not necessarily have received a sentence lower than Valenzuela's.

In addition, in sentencing Acuna to 384 months in custody, this court relied on factors that would have been present even if Acuna had pled guilty or stipulated to facts such as his leadership role in the conspiracy. Sentencing Transcript at 23:12-16. The court considered Acuna's status as an undocumented immigrant who, at the time he was sentenced, had been deported three times and had previously been in prison after having been found with methamphetamine. Id. at 24:2-10. Based on his history, this court was concerned that, even after serving a long prison sentence, Acuna would return to drug dealing. Id. at 24:23 - 25:2. The court also considered the sentences of

others involved in the conspiracy, such as the 20-year sentence given to Antonio Santos. The court concluded that, given Acuna's leadership role, Acuna's sentence should be at least 50 percent longer that Santos's. Id. at 25:12-17.

Acuna may now be attempting to argue that his offense level should have been even lower than 41. At the hearing on this motion, he stated that he would have pled guilty to conspiring to distribute only the 30 pounds of methamphetamine that he personally delivered.

At trial, Acuna admitted that he had sold roughly only 25 grams of methamphetamine. Transcript of Proceedings on August 26, 2008, at 121:8-11, 134:6-8, ECF No. 563. This court need not resolve the discrepancy between 25 grams and 30 pounds, as the record conclusively shows that Acuna cannot succeed on this motion on that ground.

First, the one-year statute of limitations bars Acuna from now contesting the drug amount. See 28 U.S.C. § 2255(f). Acuna did not contest the drug amount in his § 2255 motion or the memorandum in support of his motion, which were timely filed. He raised the issue for the first time with respect to his § 2255 petition at his hearing on this motion on May 15, 2012. At the hearing, Acuna advanced no reason for having failed to raise it within one year of when his judgment on appeal became final in March 2011. Clay v. United States, 537 U.S. 522, 524-25 (2003)

11

(holding that, when a defendant appeals his or her conviction to the Circuit Court of Appeals, but does not request a writ of certiorari from the Supreme Court, a judgment becomes final and the limitations period begins to run upon the expiration of the time to petition for a writ of certiorari to the Supreme Court); United States v. Garcia, 210 F.3d 1058 (9th Cir. 2000) ("Following the Supreme Court's definition of finality in the context of habeas review, we hold that the one-year limitations period for a federal prisoner who does not file a petition for a writ of certiorari begins to run when the time for filing the petition expires."); Sup. Ct. R. 13(1) (requiring certiorari to be sought within 90 days).

Second, the Ninth Circuit has already addressed Acuna's argument. A § 2255 petition cannot be based on a claim that has already been disposed of by an underlying criminal judgment and appeal. As the Ninth Circuit stated in Olney v. United States, 433 F.2d 161, 162 (9th Cir. 1970), "Having raised this point unsuccessfully on direct appeal, appellant cannot now seek to relitigate it as part of a petition under § 2255." On appeal, Acuna argued that the evidence at trial showed the existence of multiple conspiracies, not one over-arching conspiracy. In particular, he argued that he was not involved in the distribution of any methamphetamine in Hawaii. The Ninth Circuit rejected Acuna's argument and held, in a memorandum disposition,

that sufficient evidence demonstrated that Acuna was a leader and organizer of the single drug conspiracy that was described in the indictment. Memorandum at 3, Dec. 15, 2010, ECF No. 636 (citing United States v. Mincoff, 574 F.3d 1186, 1196 (9th Cir. 2009)). Acuna fails to understand the nature of a conspiracy charge when he protests that he delivered only 30 pounds. As a leader of the drug conspiracy, Acuna was not limited to being responsible for only what he himself delivered. Under his logic a drug kingpin who directed others to make all deliveries would never be responsible for any drug amount. Acuna was properly sentenced based on the 2,000 pounds of methamphetamine attributed to him and his co-conspirators in furtherance of the conspiracy.

Third, to the extent Acuna argues that 2,000 pounds was an incorrect calculation of the methamphetamine actually distributed by the conspiracy, that argument is procedurally barred. Even when a § 2255 petitioner has not raised an alleged error either at trial or on direct appeal, the petitioner is procedurally barred from raising an issue in a § 2255 petition if it could have been raised earlier, unless the petitioner can demonstrate both "cause" for the delay and "prejudice" resulting from the alleged error. See United States v. Frady, 456 U.S. 152, 167-68 (1982) ("[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his

double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains."); accord Davis v. United States, 411 U.S. 233, 242 (1973). Acuna was convicted of conspiring to distribute 50 grams or more of methamphetamine. The specific amount in issue (to the extent it was over 50 grams) became relevant during sentencing, and Acuna could have contested the amount at that time.

Acuna's presentence report stated that the drug conspiracy involved over 2,000 pounds of methamphetamine and showed how that amount was calculated. Presentence Investigation Report at 26, ECF No. 446. Although, in his sentencing statement, Acuna asked this court to view the amount of drugs in light of a possible appeal, he said he was "not acknowledging or denying" that 2,000 pounds was an accurate figure. Def.'s Sentencing Statement at 2, ECF No. 446. At the sentencing hearing, Acuna stated that had reviewed the report and that his counsel had stated all of his objections to the report. Sentencing Transcript at 4:24 - 5:3. Nor did Acuna contest the amount on direct appeal to the Ninth Circuit. Acuna offers no reason why he could not have contested the amount during sentencing or on appeal.

Acuna fails to show that his counsel was ineffective with respect to Claims One and Two. An evidentiary hearing is unnecessary, because, even accepting Acuna's factual allegations,

14

the record conclusively shows that he is not entitled to relief based on Claims One and Two.

### B. Claim Three.

In Claim Three of his motion, Acuna makes a number of vague allegations about how his counsel was ineffective throughout the proceedings. For example, he alleges that his counsel failed to conduct investigations concerning exculpatory evidence, seek the suppression of material evidence, seek to dismiss the indictment, request appropriate jury instructions, and present the strongest issues at trial. Acuna's motion, however, offers no specificity as to any of these allegations. Nor does the memorandum in support of his motion discuss the merits of Claim Three.

In asserting an ineffective assistance of counsel claim, "a convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." <u>Strickland</u>, 466 U.S. at 690. Acuna fails to do that here. He does not identify, for example, what evidence his counsel should have sought to suppress, or on what ground his counsel should have sought dismissal of the indictment. Acuna makes only broad and conclusory allegations of wrongdoing. Such vague allegations do not satisfy a movant's burden of at least making clear what is in issue.

### C. The Court Declines To Issue a Certificate of Appealability.

The court also declines to issue a certificate of appealability. An appeal may not be taken to the court of appeals from a final order in a § 2255 proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). The court shall issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a § 2255 petition on the merits, a petitioner, to satisfy the requirements of section 2253(c)(2), "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). No reasonable jurist would find this court's assessment of the merits of Acuna's constitutional claims debatable or wrong.

### V. CONCLUSION.

Acuna's § 2255 Petition is DENIED. The court declines to issue a certificate of appealability.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 21, 2012.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Acuna v. United States, CRIM. NO. 07-00615 SOM; CIV. NO 11-00750 SOM-RLP; ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY UNDER 28 U.S.C. § 2255.